IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE L. HOLLOWAY, )
                                   )
    Plaintiff, )
v.                               )    Civil Action No. 3:20CV109–HEH
                                   )
HAROLD CLARKE, *et al.*, )
                                   )
    Defendants. )

**MEMORANDUM OPINION**
**(Granting Defendants' Motion to Dismiss)**

Tyrone L. Holloway, a Virginia inmate, proceeding *pro se* and *in forma pauperis* filed this 42 U.S.C. § 1983 action. The matter is proceeding on Holloway's Amended Complaint. ("Complaint," ECF No. 28.)[1] Holloway names as Defendants: Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"); M. Welch, the Visitation Coordinator; and, Jeremiah Fitz, Corrections Operations Administrator. (*Id.* at 2; ECF No. 32 at 1 n.1.) The matter is before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, the Motion to Dismiss (ECF No. 31) will be granted.

    **I.**     **STANDARD FOR A MOTION TO DISMISS**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions.

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to

2

state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. HOLLOWAY'S ALLEGATIONS AND CLAIMS

On August 25, 2019, the VDOC "began video visitation for all inmates, partnering with the . . . Assisting Families of Inmates [('AFOI')]. This service was available for use with at home video visitation or the utilization of an approved (AFOI) center[s] in Virginia only." (Compl. at 3.) In September of 2019, Holloway's family informed him that they were having difficulty locating him in the visitation system and reserving a date for video visitation. (*Id.*) Eventually, Holloway discovered that because he was a registered sex offender, he could not "participate in the at home video visitation and [he] only [could] utilize the approved (AFOI) centers." (*Id.*) Holloway has "multiple family members who reside out of Virginia," and they are unable to utilize the approved AFOI centers. (*Id.*)

Defendant Welch informed Holloway that although his out-of-state relatives might not be able to communicate with him through the video visitation system, Holloway

3

could "continue to communicate with family and friends through the telephone system and through secure messaging." (*Id.*)

Based on the foregoing allegations, Holloway raises the following claims:

| | |
|---|---|
| Claim One | Defendants Clarke, Fitz, and Welch violated Holloway's First Amendment right to the freedom of association when they denied or restricted his use of video at-home visitation because of his status as a convicted sex offender. |
| Claim Two | Defendant Clarke violated Holloway's right to be free from cruel and unusual punishment when he denied or restricted Holloway's use of video at-home visitation because of his sex offender status. |
| Claim Three | Defendants Welch and Fitz violated Holloway's right under VDOC Operating Procedure 851.1 when they denied or restricted his use of video at-home visitation because of his status as a convicted sex offender. |

For the reasons set forth below, the Motion to Dismiss will be granted.

### III. ANALYSIS

#### A. Claim One

"[T]he 'freedom of association is among the rights least compatible with incarceration,' *Overton* [*v. Bazzetta*, 539 U.S. 126, 131 (2003)], because '[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.'" *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021) (citing *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977)). Nevertheless, it is unnecessary to define the exact level of associational rights retained by inmates in Virginia. This is so because "even those rights that *do* survive incarceration are afforded less protection by the Constitution than the rights of free citizens." *Id.* at 242. Here, Defendants' restrictions on Holloway's associational rights passes constitutional muster under *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

4

*Turner* reconciled the principles that inmates retain certain important constitutional protections with the deference owed to prison administrators "by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (internal citation and quotation marks omitted). In assessing whether a regulation is reasonable, courts must consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90 (internal quotation marks omitted). Significantly, in conducting this inquiry, "[t]he burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132 (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Jones*, 433 U.S. at 128).

First, a limitation on at-home video visitation between a convicted sex offender and his family promotes the rational penological objectives of rehabilitation and security. Specifically, because of their specific criminal history, sex offenders are more likely to take advantage of unrestricted at-home video visitation to engage in sexual conduct. Therefore, the regulation here requires Holloway's family who wish to take advantage of

5

the program to travel to an approved (AFOI) visitation center, where the risk of inappropriate sexual conduct is significantly decreased.

Second, Holloway enjoys a host of alternative means of associating or communicating with his family. First, his family can simply travel to an approved AFOI visitation center. Moreover, his family can visit in person, call, and send messages by mail. As the Supreme Court has observed in similar circumstances, "[a]lternatives to [video] visitation need not be ideal, however; they need only be available." *Id.* at 135.

Finally, the last two factors favor the reasonableness of the VDOC's regulation. Holloway does not suggest what accommodation he would like, other than for the VDOC to allow him to utilize the at-home video visitation program with his relatives. Lastly, Holloway does not suggest any ready alternatives to the regulation.[2] *See Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004) ("Had [plaintiff] offered evidence as to the feasibility and minimum institutional effect of a less restrictive visitation policy, this would be a closer case."). Accordingly, the Court concludes that Defendants' policy with respect to video visitation is rationally related to legitimate penological objectives. Claim One will be dismissed.

**B. Claim Two**

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and

---

[2] To the extent that Holloway suggests that the VDOC should allow sex offenders to utilize the at-home video visitation and simply monitor the video feed, it is apparent that alternative would impose a significant drain on prison personnel.

(2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298-300). "What must be [alleged] with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must allege "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The minor limitation on Holloway's video visitation privileges fails to amount to a serious deprivation of a basic human need and fails to support an inference that Defendant Clarke acted with deliberate indifference. Accordingly, Claim Two will be dismissed.

### C. Claim Three

In Claim Three, Holloway contends that the "denial of at home video visitation or restricting visits because of [his] sex offender status violates [the] visiting privileges

established in" VDOC regulations. (Compl. at 2.) A state's failure to abide by its own policies or regulations is not a federal due process issue, *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under § 1983. Moreover, Holloway's allegations do not indicate that the VDOC is violating its regulations. Rather, Holloway takes issue with the VDOC's "refusal to *change* the policy and allow for [Holloway] to utilize the at home video visitation . . . ." (Compl. at 5 (emphasis added).) Holloway does not enjoy a constitutional right to require the VDOC to alter it policies to conform to his desires. Accordingly, Claim Three will be dismissed.

## IV. CONCLUSION

The Motion to Dismiss (ECF No. 31) will be granted. Holloway's claims will be dismissed and the action will be dismissed. The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 3, 2021
Richmond, Virginia